## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VERMEER MANUFACTURING COMPANY, | |
| Plaintiff, | |
| v. | Case No.   CIV-19-855-D |
| THE TORO COMPANY, | |
| Defendant. | |

_____

### NON-PARTY THE CHARLES MACHINE WORKS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER WITH SUPPORTING BRIEF
_____

### ANCILLARY TO ABOVE-STYLED LAWSUIT CURRENTLY PENDING IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CIVIL ACTION NO. 4:19-CV-00050-CRW-HCA

TOBY M. McKINSTRY, OBA #17401
JEFFERSON I. RUST, OBA #16722
ROSS N. CHAFFIN, OBA #21131
TOMLINSON MCKINSTRY, P.C.
Two Leadership Square, Suite 450
211 N. Robinson Avenue
Oklahoma City, OK 73102
(405) 606-3350 Telephone
(866) 633-6162 Facsimile
tobym@tmoklaw.com
jeffr@tmoklaw.com
rossc@tmoklaw.com
***Attorneys for non-party,***
***The Charles Machine Works, Inc. d/b/a Ditch Witch***

Dated September 13, 2019.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................... iii

BACKGROUND ....................................................................................... 2

ARGUMENT AND AUTHORITIES ........................................................ 7

      Standards Governing Subpoenas Issued to Non-Parties... ..................... 7

      Standards Governing Motions to Quash and Motions for
      Protective Order ........................................................................... 9

I.    VERMEER'S NONPARTY SUBPOENAS REQUIRE DISCLOSURE
      OF CONFIDENTIAL INFORMATION AND TRADE SECRETS
      TO A DIRECT COMPETITOR ................................................... 10

II.   VERMEER'S NONPARTY SUBPOENAS ARE OVERLY BROAD
      IN TIME AND PRODUCT SCOPE AND ARE NOT FACIALLY
      RELEVANT TO ITS CLAIMS ................................................... 14

III.  VERMEER'S NONPARTY SUBPOENAS IMPOSE AN UNDUE
      BURDEN AND SEEK INFORMATION THAT MAY BE OBTAINED
      FROM ALTERNATE SOURCES ................................................ 18

## TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE**

*American Standard Inc., v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987) ...............   11-12

*Barton v. Tomacek*, 2012 WL 4735927 (N.D. Okla. Oct. 3, 2012) ......................   15-16

*Builders Ass'n of Greater Chicago v. City of Chicago,* 2002 WL 1008455
(N.D. Ill. May 13, 2002) .........................................................................................   8-9

*Cash Today of Texas, Inc. v. Greenberg*, 2002 WL 31414138
(D. Del. Oct. 23, 2002) ..........................................................................................   11

*Centurion Indus., Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323
(10th Cir. 1981) .......................................................................................................   10

*Curtis v. Progressive Northern Ins. Co.*, 2018 WL 2976432
(W.D. Okla. June 13, 2018)......................................................................................   8

*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513 (D. Kan. 2010) .......................   15

*Everco Indus., Inc. v. O.E.M. Prods. Co.*, 362 F.Supp. 204
(N.D. Ill. 1973) ........................................................................................................   10-11

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw,
Inc.*, 211 F.R.D. 658 (D. Kan. 2003) ......................................................................   18

*Griggs v. Vanguard Group, Inc.*, 2019 WL 3058982
(W.D. Okla. May 7, 2019).......................................................................................   9, 14-15

*Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677 (N.D. Okla. 2008) ...............   8-9

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
669 F.2d 620 (10th Cir. 1982) ...............................................................................   9

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and
Antitrust Litig.*, 2018 WL 2445098 (D. Kan. May 31, 2018)..............................   10

*Jobson v. United States ex rel. Dept. of Veteran Affairs*, 2018 WL 8299886
(W.D. Okla. Aug. 27, 2018) ..................................................................................   10

*Kizer v. Starr Indemnity & Liability Co.*, 2019 WL 2017556
(W.D. Okla. May 6, 2019)................................................................. 7, 10

*Lujan v. Exide Technologies*, 2011 WL 1594952 (D. Kan. April 27, 2011) ........ 9

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525
(D. Del. 2002).................................................................................. 11-14

*Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318 (Fed. Cir. 1990)................ 11

*Premier Election Solutions, Inc. v. Systest Labs Inc.*, 2009 WL 3075597
(D. Colo. Sept. 22, 2009).................................................................... 8

*R & D Business Systems v. Xerox Corp.*, 152 F.R.D. 195 (D. Colo. 1993) .......... 11

*Reibert v. CSAA Fire & Cas. Ins. Co.*, 2018 WL 279348
(N.D. Okla. Jan. 3, 2018)................................................................... 15, 16

*Rice v. U. S.*, 164 F.R.D. 556 (N.D. Okla. 1995) ..................................... 7

*Rohrbough v. Harris*, 549 F.3d 1313 (20th Cir. 2008)............................... 10

*Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, 2008 WL 2309011
(D. Kan. June 3, 2008)....................................................................... 14-15

*Stephens v. Farmers Ins. Co.,* 2017 WL 11144627 (W.D. Okla. May 8, 2017)... 18

*Syngenta Crop Protection, LLC v. Willowood, LLC*, 2016 WL 4925099
(D. Del. Sept. 14, 2016)...................................................................... 11, 14

*U. S. v. United Fruit Co.*, 410 F.2d 553 (5th Cir.), 396 U.S. 820 (1969)............... 10

*Ward v. Liberty Ins. Corp.*, 2018 WL 991546 (W.D. Okla. Feb. 20, 2018) ......... 7, 16

## STATUTES        PAGE

35 U.S.C. § 112 ................................................................................ 4

35 U.S.C. §§ 271 *et seq.* ................................................................... 2

35 U.S.C. § 283 ................................................................................ 3

iv

35 U.S.C. § 284 ................................................................................... 3

35 U.S.C. § 285 ................................................................................... 3, 4

**RULES**                                                                      **PAGE**

Fed. R. Civ. P. 11................................................................................. 8

Fed. R. Civ. P. 26................................................................................. 7, 8, 18

Fed. R. Civ. P. 26(b)(1) ....................................................................... 7, 9, 15-16, 18

Fed. R. Civ. P. 26 Advisory Committee Notes, 2000 Amendments, Subdivision (b)(1) ................................................................................ 7

Fed. R. Civ. P. 26(c) ............................................................................. 10

Fed. R. Civ. P. 26(c)(1) ........................................................................ 1

Fed. R. Civ. P. 26(c)(1)(A) ................................................................... 18

Fed. R. Civ. P. 26(g) ............................................................................. 8

Fed. R. Civ. P. 26(g)(2) ........................................................................ 8

Fed. R. Civ. P. 45................................................................................. 7, 8, 10, 18

Fed. R. Civ. P. 45(c) ............................................................................. 1, 8

Fed. R. Civ. P. 45(c)(1) ........................................................................ 8

Fed. R. Civ. P. 45(d)(1) ........................................................................ 8

Fed. R. Civ. P. 45(d)(3) ........................................................................ 1, 10

Fed. R. Civ. P. 45(d)(3)(A)(iii).............................................................. 10

Fed. R. Civ. P. 45(d)(3)(A)(iv).............................................................. 10, 18

LCvR37.1 ............................................................................................ 2, 8, 12

Pursuant to Fed.R.Civ.P. 45(d)(3) and 26(c)(1), non-party, The Charles Machine Works, Inc. d/b/a Ditch Witch ("CMW"), respectfully files this action ancillary to the above-styled lawsuit, currently pending in the United States District Court for the Southern District of Iowa, Civil Action No. 4:19-cv-00050-CRW-HCA ("Underlying Case"). CMW hereby asserts a combined Motion to Quash a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" ("Document Subpoena") and a Motion for Protective Order prohibiting the enforcement of a "Subpoena to Testify at a Deposition in a Civil Case" ("Deposition Subpoena").

The Document Subpoena and the Deposition Subpoena were issued from the United States District Court for the Southern District of Iowa ("Issuing Court") by counsel for Plaintiff in the Underlying Case, Vermeer Manufacturing Company ("Plaintiff" or "Vermeer"). Both Subpoenas direct CMW to produce documents and/or appear for deposition at the office of Professional Reporters, 511 Couch Drive, Suite 100, Oklahoma City, OK 73102. Accordingly, the Place of Compliance, as defined in Fed.R.Civ.P. 45(c), is located within this Court's jurisdiction.

As established below, the Document and Deposition Subpoenas seek a broad range of documents, information, objects and testimony from CMW which (i) are confidential and proprietary information and testimony, and are not facially relevant to the patent infringement claims, counterclaim or defenses at issue in the Underlying Case, (ii) are unlimited in time and product scope and impose an undue burden, and (iii) are not

proportional to the needs of the Underlying Case.  Based on the argument and authorities set out below, CMW respectfully requests an Order quashing the Document Subpoena and prohibiting enforcement of the Deposition Subpoena as set forth below.

Pursuant to LCvR37.1, the undersigned has conferred by telephone with Vermeer's counsel on September 6, 2019, and exchanged subsequent email communications.  After good faith, sincere efforts to resolve this matter, the parties have narrowed the disputed issues between them and CMW has agreed to search for and produce some of the information Vermeer seeks, to the extent it exists.  However, the parties have been unable to resolve an overarching impasse concerning both subpoenas without court intervention.  The overarching impasse concerns Vermeer's attempt to seek discovery of internal, confidential and trade secret information from CMW (a direct competitor) who is not a party to the Underlying Case pending in Iowa.  In support of these Motions, CMW submits the following Brief in Support for the Court's consideration.

## BACKGROUND

The Underlying Case involves an action for infringement of U.S. Patent No. 10,202,266 under 35 U.S.C. §§ 271 *et seq.* brought by Vermeer on February 12, 2019 against The Toro Company ("Defendant" or "Toro").  Vermeer's Complaint alleges Vermeer is the owner of all right, title, and interest in a valid and enforceable patent, U.S. Patent No. 10,202,266, entitled *Low Profile Compact Tool Carriers* ("the '266 Patent"), and has the right to sue for infringement of that patent.  (Complaint [Doc. 1-Underlying Case], ¶¶ 7-9).  The Complaint states the '266 Patent was issued by the U.S. Patent and

Trademark Office on February 12, 2019.  (*Id.*, ¶ 7).  The Complaint alleges Toro has and continues to "infringe the '266 Patent by making, selling, and offering to sell, and using infringing products in the United States, including at least Toro's Dingo TX 1000 ("the Accused Product")."  (*Id.*, ¶ 11).  The Complaint contains five (5) separate Exemplary Asserted Claims of Infringement explaining the factual and legal basis for its claim against Toro.  (*Id.,* ¶¶ 18-74, at pp. 3-17).

Vermeer's Complaint seeks the following relief:

A. Permanently enjoin Toro and those active in concert or participation with it from further infringing the ['266 Patent], pursuant to U.S.C. § 283;
B. Enter judgment that Toro infringes one or more claims of the ['266 Patent];
C. Enter judgment that Toro's infringement of the ['266 Patent] has been willful;
D. Award Vermeer monetary damages in an amount sufficient to compensate Vermeer for the harm caused by Toro's infringement, not less than a reasonable royalty for the use made of the inventions, along with pre- and post-judgment interest pursuant to 35 U.S.C. § 284;
E. Award Vermeer enhanced damages for Toro's infringement pursuant to 35 U.S.C. § 284;
F. Award Vermeer supplemental monetary damages for any infringing acts after judgment and before entry of a permanent injunction;
G. Declare this case exceptional and award Vermeer its costs, expenses, and attorneys' fees pursuant to 35 U.S.C. § 285; and
H. Award Vermeer such other and further relief as the Issuing Court finds just and proper.

(*Id.*, at pp. 17-18).

On March 8, 2019, Toro filed its Answer, Affirmative Defenses, and Counterclaim in the Underlying Case (Answer and Counterclaim [Doc.19-Underlying Case], at pp. 1-10).  Toro generally and specifically denied Vermeer's allegations of infringement and asserted the following counterclaims:  (i) Declaratory Judgement of Invalidity (Invalid as Anticipated by Prior Art); (ii) Declaratory Judgment of Invalidity (Invalid as Obvious);

(iii) Declaratory Judgement (Non-Infringement); (iv) Declaratory Judgment (Invalidity of '266 Patent Due to Lack of Enablement); and (v) Declaratory Judgment (Invalidity of '266 Patent Due to Inadequate Written Description and Being Vague and Indefinite in Violation of 35 U.S.C. § 112).  (*Id.*, ¶¶ 1-63, at pp. 11-21).

Toro's Counterclaim seeks the following relief:

1. [A judgment that] Vermeer take nothing by its Complaint, and that the claims of Vermeer be denied in all respects;
2. That [the Issuing Court] determine and declare that Toro has not and does not infringe, contributorily infringe, or infringe by inducement any claim of the '266 Patent and that the claims of said Patent, each and all of them, are invalid, void and unenforceable;
3. That [the Issuing Court] preliminarily and permanently enjoin Vermeer and its agents from instituting, prosecuting or threatening any action alleging that Toro has or is infringing, contributorily infringing or infringing by inducement any claim of the '266 Patent by manufacturing, using, selling, offering for sale, or importing any of Toro's products;
4. That [the Issuing Court] award Toro its costs, disbursements, and attorneys' fees for this action, including those pursuant to 35 U.S.C. § 285, as appropriate, together with interest as provided by law; and
5. That Toro be awarded such other and further relief as [the Issuing Court] may deem just and equitable.

(*Id.*, at p. 21).

The Scheduling Order entered in the case provided a deadline for Vermeer to file its Infringement Contentions by May 17, 2019.  The deadline for the parties to file motions to amend their pleadings or add parties was June 3, 2019.  (Scheduling Order [Doc. 39-Underlying Case, ¶¶ 4-5, at p. 1).  The Scheduling Order requires all fact discovery to be completed by January 10, 2020, and the case is set for trial on November 2, 2020.  (*Id.*, ¶¶ 1, 14, at pp. 1-2).

On August 9, 2019, Vermeer served CMW with the Document and Deposition Subpoenas. The Document Subpoena directs CMW to produce the following documents at the designated place of compliance on August 28, 2019, at 9:00 a.m.:

1. Documents sufficient to identify every model of mini skid steer ever offered by Ditch Witch, along with the following information for each: (1) machine weight, (2) horse power, (3) rated operating capacity, (4) hinge pin height, (5) list price, and (6) dates during which the machine was available for sale in the U.S. market.

2. Documents sufficient to identify every alternative mini skid steer design, concept, or prototype considered by Ditch Witch to increase lift capacity or lift height, regardless of whether or not it has been commercialized.

3. All market studies, consumer surveys, focus group results, reports, and presentations relating to customer interest in, or demand for, increased lift capacity or lift height for compact utility loaders.

4. All presentations, studies, competitive assessments, comparisons, memos, reports, or meeting minutes relating to Toro's TX-1000 or Vermeer's CTX50 or CTX100.

5. Documents sufficient to show whether Ditch Witch ever considered a vertical lift loader arm configuration for a mini skid steer.

6. For each mini skid steer design, concept, or prototype having vertical lift loader arms that You considered, documents sufficient to (1) show its specific features, (2) identify the time period during which it was pursued, (3) identify the current status of the project or the reason(s) why it was not commercialized, and (4) quantify the man hours spent pursuing it.

7. All documents and communications referring or relating to the introduction of mini skid steers with vertical-lift arms by Toro or Vermeer in 2015.

8. All communications with Toro relating to Vermeer or Vermeer's CTX50 or CTX100 mini skid steers.

9. Documents sufficient to show all difficulties, problems, or failures that You encountered or anticipated with implementing vertical lift loader arms on a mini skid steer.

(Document Subpoena, Attachment A, Ex. 1).

The Deposition Subpoena directs CMW to produce a witness at the designated place of compliance on September 17, 2019, at 9:00 a.m., to testify on the following:

1. The documents responsive to Vermeer's document subpoena and Your efforts to gather and produce these documents.
2. The market for mini skid steers in the United States.
3. The features of mini skid steers that drive customer demand.
4. Ditch Witch's efforts to design or develop a mini skid steer with vertical lift loader arms, including the specific designs, concepts, or prototypes considered.
5. Ditch Witch's efforts to design or develop a mini skid steer with increased lift capacity or lift height, including the specific designs, concepts, or prototypes considered.
6. Ditch Witch's reaction to the introduction of mini skid steers with vertical-lift arms by Toro or Vermeer in 2015.
7. Communications with Toro relating to Vermeer or Vermeer's CTX50 or CTX100 mini skid steers.
8. Difficulties, problems, or failures encountered or anticipated with implementing vertical lift loader arms on a mini skid steer.
9. Difficulties or challenges posed by attempting to increase lift capacity or lift height for mini skid steers.

(Deposition Subpoena, Attachment B, Ex. 2).

On August 23, 2019, CMW timely served its written objections to the Document and Deposition Subpoenas to Vermeer.  (CMW Objection Letter, Ex. 3).  CMW's objections establish:

- Many of Vermeer's requests are unlimited in time, and due to broad product-related definitions, cover a broad range of products considered or developed by CMW ranging from the early 2000s to the present.

- Many of Vermeer's requests seek the production and testimony relating to internal reports and competitive assessments, records, documents and information which are extremely sensitive, confidential and proprietary to CMW.

- Several of Vermeer's requests seek the production and testimony related to product concepts and ideas that have not been commercialized or marketed to consumers, as well as information reflecting CMW's analysis and decision-making regarding those product concepts.  The harm resulting from disclosure of such information to a direct competitor, such as Vermeer, would be significant.

- Several of Vermeer's requests would require year-by-year, and sometimes month-by-month, manual searches of outdated product files not accessible

through currently utilized systems and applications.  Such searches would require the use of multiple personnel and would take several weeks to conduct.

(*Id.*)

## ARGUMENT AND AUTHORITIES

### Standards Governing Subpoenas Issued to Non-Parties

"A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the Rules." *Rice v. U. S.*, 164 F.R.D. 556, 556-57 (N.D. Okla. 1995).  Rule 26 limits discovery to "nonpriviledged matter that is *relevant to any party's claim or defense* and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed.R.Civ.P. 26(b)(1) (emphasis added).

"The Advisory Committee Notes for the 2000 Amendments to Rule 26 direct the parties and court to '*focus on the actual claims and defenses involved in the action*' in *determining relevance for purposes of discovery*."  *Ward v. Liberty Ins. Corp.*, 2018 WL 991546, at *2 (W.D. Okla. Feb. 20, 2018) (citing Fed.R.Civ.P. 26 Advisory Committee Notes, 2000 Amendments, Subdivision (b)(1)) (emphasis added).  "[T]he Court 'has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses.'"  *Kizer v. Starr Indemnity & Liability Co.*, 2019 WL 2017556, at *2 (W.D. Okla. May 6, 2019) (citation omitted).

Rule 45 imposes certain duties and obligations on parties serving subpoenas and states: "A party or attorney responsible for issuing and serving a subpoena *must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena*. Fed.R.Civ.P. 45(d)(1) (emphasis added). With regard to subpoenas issued to nonparties, Courts construing Rule 45 have emphasized: "'While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, *discovery from third-parties in particular must, under most circumstances, be closely regulated*.'" *Curtis v. Progressive Northern Ins. Co.*, 2018 WL 2976432, at *1 (W.D. Okla. June 13, 2018) (quoting *Premier Election Solutions, Inc. v. Systest Labs Inc.*, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009)) (emphasis added).

Courts also hold Rule 45 imposes obligations beyond those imposed by Rule 26:

> While Rule 11 and 26(g)(2) focus on the actions and motives of the issuing party, Rule 45(c) focuses on the burden imposed on the subpoena recipient. . . . Rule 45(c) requires the attorney issuing the subpoena to take reasonable steps to avoid imposing an undue burden or expense on the person subject to the subpoena, and direct that the court "shall enforce this duty." That language suggests "this duty" owed to non-parties is in addition to the duties imposed by Rules 11 and 26(g). Thus, good faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that Rule.[1]

---

[1] During the parties' Local Rule 37.1 discussions, Vermeer has stated that this matter is distinguishable from the authorities cited in this Motion concerning the burdens imposed on parties issuing third-party subpoenas because Toro (the sole Defendant in the Underlying Case) recently acquired CMW as a subsidiary entity. Vermeer's argument on this issue is without merit. Because Vermeer is seeking documents and deposition testimony from CMW by way of third-party subpoenas, Vermeer is obligated to comply with all rules and standards applicable to subpoenas issued pursuant to Fed.R.Civ.P. 45. The identity of CMW's current owner is immaterial and does not cure the defects in the Subpoenas. This is particularly true where Vermeer's broad discovery requests seek documents and deposition testimony from a direct competitor covering a broad range of

*Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679 (N.D. Okla. 2008) (quoting *Builders Ass'n of Greater Chicago v. City of Chicago,* 2002 WL 1008455, at *3 (N.D. Ill. May 13, 2002) (further citations omitted).

"When the discovery sought is relevant on its face, the party resisting discovery must prove the requested discovery does not come within the scope of Rule 26(b)(1), or is so marginal that its potential harm outweighs the presumption of broad discovery.  On the other hand, *if the discovery sought is not relevant on its face, the party seeking discovery must prove it is relevant*."  *Lujan v. Exide Technologies*, 2011 WL 1594952, at *4 (D. Kan. April 27, 2011) (citation omitted) (emphasis added).

### Standards Governing Motions to Quash and Motions for Protective Order

"In considering both (i) whether a nonparty subpoena should be quashed or modified and (ii) whether a protective order that modifies the scope of a subpoena should issue, the Court applies a consistent test.  The Court balances 'the burden imposed upon the responding [non]party if a protective order is not granted [or the subpoena is not quashed or modified] as compared with the burden imposed upon the requesting party if a protective order imposing conditions is granted [or the subpoena is quashed or modified].'"  *Griggs v. Vanguard Group, Inc.*, 2019 WL 3058982, at *2 (W.D. Okla. May 7, 2019) (citing *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 669 F.2d 620, 623 (10th Cir. 1982)) (alterations in original).

---

product models and covering a time period spanning from the early 2000s to the present, while Toro's acquisition of CMW as a subsidiary entity occurred within the last six (6) months.

"The Court may issue a protective order under Rule 26(c) of the Federal Rules of Civil Procedure upon a showing of good cause by the movant to protect that party from annoyance, embarrassment, undue oppression or undue burden or expense." *Jobson v. United States ex rel. Dept. of Veteran Affairs*, 2018 WL 8299886, at *1 (W.D. Okla. Aug. 27, 2018) (citing Fed.R.Civ.P. 26(c) and *Centurion Indus., Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981)). "Whether to enter a protective order is within the exercise of the court's discretion." *Id.* (citing *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (20th Cir. 2008)).

## I.     VERMEER'S NONPARTY SUBPOENAS REQUIRE DISCLOSURE OF CONFIDENTIAL INFORMATION AND TRADE SECRETS TO A DIRECT COMPETITOR.

Rule 45 authorizes a Court "to quash a subpoena under specified circumstances, including when the subpoena requires disclosure of privileged or protected materials (when an exception or waiver does not apply), or when the subpoena subjects a person to undue burden." *Kizer*, 2019 WL 2017556, at *2 (citing Fed.R.Civ.P. 45(d)(3)(A)(iii) and (iv)). Rule 45 "also allows a court discretion to quash or modify a subpoena that requires the disclosure of a 'trade secret or other confidential research, development, or commercial information.'" *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, 2018 WL 2445098, at *2 (D. Kan. May 31, 2018) (citing Fed.R.Civ.P. 45(d)(3)); *see also U. S. v. United Fruit Co.*, 410 F.2d 553, 557 (5th Cir.), *cert. denied*, 396 U.S. 820 (1969) (holding a party would be harmed by disclosure of financial and marketing data to competitors); *Everco Indus., Inc. v. O.E.M. Prods. Co.*,

362 F.Supp. 204, 206 (N.D. Ill. 1973) (holding the parties' status as competitors a factor in denying discovery of confidential information).

Courts have also routinely concluded that a protective order entered by the parties to a case is often inadequate to protect confidential information and trade secrets from nonparties—particularly where one, or both, of the parties to the litigation are competitors of the nonparty. *See Syngenta Crop Protection, LLC v. Willowood, LLC*, 2016 WL 4925099, at *2 (D. Del. Sept. 14, 2016) ("The court must consider 'not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order.' 'Disclosure to a competitor is presumed more harmful than disclosure to a non-competitor.'") (citing *Cash Today of Texas, Inc. v. Greenberg*, 2002 WL 31414138, at *2 (D. Del. Oct. 23, 2002)) (internal citation omitted); *R & D Business Systems v. Xerox Corp.*, 152 F.R.D. 195,198 (D. Colo. 1993) ("Even if the Protective Order adequately protected movants' interests, and the Court is not convinced that it does, Xerox must still meet the burden of showing the necessity for the information sought.") (citing *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1325 (Fed. Cir. 1990)).

In *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525 (D. Del. 2002), a federal district court directly addressed the issue of a party obtaining internal confidential information and trade secrets from a nonparty in a patent infringement action.  Relying on several decisions from the Federal Circuit Court of Appeals, the district court determined it must apply "a balancing test to determine whether the need of the party seeking disclosure outweighs the adverse affect disclosure

would have on the policies underlying the claimed privilege." *Id.* at 528 (citing *American Standard Inc., v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987)).  The court emphasized: "If the information sought is confidential and its disclosure might be harmful, then 'the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant and necessary to its case.'" *Id.*  Importantly, the court also considered whether the existence of a protective order in the underlying patent infringement case would adequately protect disclosure of the nonparty's confidential information and trade secrets.[2]

In applying these standards, the *Mannington Mills* court concluded the protective order was *inadequate* to protect the nonparty's interests in its confidential information and trade secrets, stating:

> Although the protective order allows the designation by Congoleum that such information is confidential and limits initial disclosure to outside counsel, the parties to this litigation are left with the option of how disclosure of such confidential information is handled at trial.  As a result, control is in the hands of Congoleum's undisputed competitors and the court.  Despite Mannington's arguments to the contrary, "it would be divorced from reality to believe that either party here would serve as the champion of its competitor … to maintain the confidentiality designation or limit public disclosure … during trial."

*Id.* at 530-31 (citation omitted) (alterations in original).  Based on these conclusions, the court ruled the potential hardship to nonparty Congoleum in responding to the subpoena

---

[2] In this matter, during the parties' Local Rule 37.1 conferences, Vermeer has stated that CMW's confidential and proprietary documents and information sought in the Document and Deposition Subpoenas are discoverable and the protective order entered in the Underlying Case provides adequate protection over such documents and information.

clearly outweighed any tangential need by Mannington for the requested information. Accordingly, the court granted the Congoleum's motion to quash. *Id.* at 532.

Here, Paragraphs 2, 4-7, and 9 of Attachment A to the Document Subpoena, and Paragraphs 1, 4-6, 8 and 9 of Attachment B to the Deposition Subpoena, all seek documents and information dating from the early 2000s to the present which, in substantial part, constitute internal confidential and proprietary information belonging to CMW. (*See* CMW Objection Letter, Ex. 3; and Koch Affid., Ex. 4). Several of Vermeer's requests seek information regarding *every* responsive concept that was *ever* considered by CMW even if never commercialized and marketed to consumers over that same time period.

The Affidavit of CMW's Vice President of Product Development, Geoff Koch, establishes that CMW goes to great lengths to protect its confidential and proprietary information, which includes all internal trade secrets related to product development. All employees with access to CMW's confidential information are required to keep all such information strictly confidential and are not permitted to disclose such information to any person or company outside of CMW during employment and after the employee ceases employment for any reason. Access to CMW's business premises is strictly controlled and access to electronically stored confidential information is password protected. (Koch Affid., ¶ 3, Ex. 4).

CMW's Confidential Information Policy defines the term "Confidential Information" to mean: any technical or non-technical information, including but not limited to, research findings, products, formulas, product developments, discoveries,

inventions, improvements, designs, drawings, engineering studies, customer lists, financial and business data, market and product disclosures, and all other commercial or industrial techniques or information, whether the information is patentable, covered by copyright/trademark or not. (*Id.*, ¶ 4). The Koch Affidavit establishes that the harm to CMW from disclosure of information concerning product concepts and ideas that have never been commercialized and/or marketed to consumers would be significant. (*Id.*, ¶ 5(d)-(e)). The Protective Order entered in the Underlying Case is not sufficient to protect CMW's interests in its confidential information because CMW and Vermeer are direct competitors in certain product lines. The Koch Affidavit also establishes that disclosure of extremely sensitive and confidential information to a direct competitor is harmful to CMW's competitive position in the market. (*Id.*, ¶ 6(a)-(c)).

As stated above, Courts routinely conclude that a protective order entered in litigation is often insufficient and inadequate to protect confidential information and trade secrets from nonparties who are direct competitors to one or more of the parties. *See Syngenta Crop Protection, LLC*, 2016 WL 4925099, at *2; *Mannington Mills, Inc.*, 206 F.R.D. at 530-31. Accordingly, this Court should quash the Document and Deposition Subpoenas in their entirety with regard to all requests seeking CMW's confidential and proprietary information, including product-development trade secrets.

## II. VERMEER'S NONPARTY SUBPOENAS ARE OVERLY BROAD IN TIME AND PRODUCT SCOPE AND ARE NOT FACIALLY RELEVANT TO ITS CLAIMS.

In assessing the burden imposed on a nonparty by a subpoena, Courts must conduct "*a case-specific inquiry that turns on such factors as relevance, the need of the*

*party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed*." *Griggs*, 2019 WL 3058982, at \*2 (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, 2008 WL 2309011, at \*2 (D. Kan. June 3, 2008)) (emphasis added).  Courts also hold that when the relevance of a particular discovery request is not "readily apparent" from the face of the request, the issuing party bears the burden of showing the relevancy of the requested information.  *Reibert v. CSAA Fire & Cas. Ins. Co.*, 2018 WL 279348, at \*5 (N.D. Okla. Jan. 3, 2018) ("The relevance of discovery regarding Hancock's inspection of the roofs of hundreds of other insureds is not 'readily apparent.' And Plaintiffs bear the 'burden of showing the relevance of the requested information.'") (citation omitted); *see also Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010) ("[W]hen the relevancy of the requested discovery is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.") (citation omitted).

In *Griggs*, the Court found the Defendants' subpoena "facially overbroad" where it sought information "not wholly relevant" to the issues in the case.  The Court noted that the subpoenas sought "*all* agreements, engagement letters, and invoices [between the parties], as well as *all* related documents.  It also seeks *all* nonprivileged documents related to Ms. Thomas's representation of Mr. Bertschinger in the 2006 case." *Griggs*, 2019 WL 3058982, at \*3 (emphasis added).  The Court found the low level of any potential relevance of the facially overbroad request was outweighed by the substantial burden on the subpoena recipient.  *Id.*; *see also Reibert*, 2018 WL 279348, at \*4 ("Although the broad concept of relevance remains largely intact following the 2015

Amendments, Rule 26(b)(1) 'does not authorize unlimited discovery.'  The fact that a plaintiff has a 'broad theory of the case' does not automatically justify broad discovery.") (citing *Barton v. Tomacek*, 2012 WL 4735927, at *4 (N.D. Okla. Oct. 3, 2012)) (internal citation omitted); *see also Ward*, 2018 WL 991546, at *3 (finding a nonparty subpoena overly broad and not proportional to the needs of the case which used blanket terms such as "'all documents,' 'all marketing materials.' 'all documents regarding,' 'all documents indicating,' 'all documents indicating or referencing,' 'pertaining to,' and 'all deposition transcripts,' … most without reference to scope or time").

Here, the majority of Vermeer's nonparty discovery requests are unlimited to any particular time period and, due to broad product-related definitions, cover a broad range of products ever considered, tested or developed by CMW ranging from the early 2000s to the present.  For example, Document Request 1 seeks "documents sufficient to identify *every* model of mini skid steer *ever* offered by Ditch Witch …."  (Document Subpoena, Attachment A, Request No. 1, Ex. 1) (emphasis added).  Document Request 2 seeks "[d]ocuments sufficient to identify *every* alternative mini skid steer design, concept, or prototype considered by Ditch Witch to increase lift capacity or lift height …."  (*Id.*, Request 2) (emphasis added).   Request 3 seeks "[a]ll market studies, consumer surveys, focus group results, reports, and presentations relating to customer interest in, or demand for, increased lift capacity or lift height for compact utility loaders."  (*Id.*, Request 3). Request 9 seeks "[a]ll documents sufficient to show all difficulties, problems, or failures that [CMW] encountered or anticipated with implementing vertical lift loader arms on a mini skid steer."  (*Id.*, Request 9).   Vermeer's Deposition Subpoena seeks testimony

16

related to many of the same broad categories of information for an unlimited period of time and the need for this information from CMW is not readily apparent.  (*See* Deposition Subpoena, Attachment B, Ex. 2).

CMW's Written Objections to the subpoenas establish that Vermeer's  Document Requests, as a whole, cover approximately twelve (12) different product models offered by CMW from the early 2000s to the present and searching for responsive documents would require year-by-year and/or month-by-month searches for each product model. (CMW Objection Letter, Ex. 3).  It is not readily apparent from the face of the Complaint or Vermeer's Subpoenas how CMW's internal product-development documents are relevant to Vermeer's claims of patent infringement by Toro or its defenses of patent invalidity.   It is not readily apparent how *CMW's internal product-development documents* covering a broad range of product models and/or product-concepts *ever considered* by CMW over a nineteen (19) year period are relevant to Vermeer's claim relating to the '266 Patent that issued in February of this year.  This is particularly true with regard to requests for information concerning products and concepts that may have been considered but never commercialized by CMW over the years.  Further, it is not readily apparent how CMW's internal market studies, consumer surveys, focus group results, and other records related to customer interest in increased lift capacity or lift height in compact loaders is relevant to Vermeer's claims and defenses.

As noted above, in determining relevance and proportionality, the Court must consider whether the information sought was described with sufficient particularity to determine the requesting party's need for the information.  Vermeer's broad requests for

information and testimony pertaining to multiple product lines over an extended period of time do not contain sufficient particularity to determine the relevance related to the claims and defenses at issue.   They also lack sufficient particularity to determine Vermeer's need for such broad categories of product information from CMW.

### III.   VERMEER'S NONPARTY SUBPOENAS IMPOSE AN UNDUE BURDEN AND SEEK INFORMATION THAT MAY BE OBTAINED FROM ALTERNATIVE SOURCES.

Rule 45 requires a court to quash or modify a subpoena that "subjects a person to undue burden."   Fed.R.Civ.P. 45(d)(3)(A)(iv).   "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and *the status of a person as a non-party is a factor that weighs against disclosure*." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662-63 (D. Kan. 2003) (emphasis added).   The standard under Rule 26 is as follows:

> [A court] is obligated to 'limit the … extent of discovery otherwise allowed … if it determines that … the proposed discovery is outside the scope permitted by [Rule 26(b)(1)],' or 'if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'   The Court may also, 'for good cause, … protect a party … from annoyance, embarrassment, oppression, or undue burden or expense … [by] forbidding the disclosure or discovery[.]'

*Stephens v. Farmers Ins. Co.,* 2017 WL 11144627, at *2 (W.D. Okla. May 8, 2017) (citing Fed.R.Civ.P. 26(c)(1)(A) (internal citations omitted) (alterations in original).

Here, many of Vermeer's document requests would require year-by-year, and sometimes month-by-month, manual searches of outdated product files and would require

the use of multiple personnel and would take several weeks to conduct.  Several requests seek documents and testimony that could be obtained through alternative channels, including publicly available sources.  (CMW Objection Letter, Ex. 3).  For example, information sought by categories (1) through (4) of Paragraph 1 of Attachment A is available through publicly available sources.  (Koch Affid., ¶ 5(a), Ex. 4).  Information responsive to categories (5) and (6) of this request covers approximately twelve (12) different product models from the early 2000s to the present and would require CMW to conduct individualized year-by-year and/or monthly search of files for each product model to obtain.  (*Id.*).

Information sought by Paragraph 2 of Attachment A would require CMW to conduct searches of old CAD files which were created or stored on an outdated CAD system, which is no longer used by CMW and no longer compatible with CMW's current systems.  (*Id.*, ¶ 5(b)).  Information responsive to Paragraph 3 of Attachment A would require CMW to conduct searches of sales, marketing and consumer feedback files ranging from approximately 2003 to the present.  CMW estimates searches for responsive information could involve in excess of 50 personnel to conduct.  (*Id.*, ¶ 5(c)).  Likewise, the testimony responsive from the information sought in Paragraphs 1 through 3 of Attachment B seeks information which could be obtained by Vermeer through alternative channels, including publicly available sources.  (*Id.*, ¶ 6(a)-(b)).  Accordingly, this Court should quash the Document and Deposition Subpoenas with regard to all requests which pose an undue burden on nonparty CMW and/or which seek information that can be obtained by Vermeer through alternative channels.

WHEREFORE, for the reasons discussed above,  nonparty, The Charles Machine Works, Inc., respectfully requests an Order quashing the Document Subpoena and prohibiting enforcement of the Deposition Subpoena in its entirety.

Respectfully submitted,


s/TOBY M. MCKINSTRY
TOBY M. MCKINSTRY, OBA #17401
JEFFERSON I. RUST, OBA #16722
ROSS N. CHAFFIN, OBA #21131
TOMLINSON MCKINSTRY, P.C.
Two Leadership Square, Suite 450
211 N. Robinson Avenue
Oklahoma City, OK 73102
(405) 606-3350 Telephone
(866) 633-6162 Facsimile
tobym@tmoklaw.com
jeffr@tmoklaw.com
rossc@tmoklaw.com
*Attorneys for non-party, The Charles Machine Works, Inc. d/b/a Ditch Witch*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 13, 2019, I filed the foregoing Motion To Quash and Motion For Protective Order With Supporting Brief with the Clerk of Court and will serve the same via electronic mail and Certified U.S. Mail, Return Receipt Requested to the following parties of the ancillary case currently pending in the United States District Court for the Southern District of Iowa, Civil Action No. 4:19-CV-00050-CRW-HCA:

Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Mark A. Thomas
Marc W. Vander Tuig
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621-5070 (telephone)
(314) 621-5065 (facsimile)
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com
mathomas@armstrongteasdale.com
mvandertuig@armstrongteasdale.com

and

Michael R. Reck, Lead Counsel
Espnola F. Cartmill
BELIN MCCORMICK, P.C.
666 Walnut Street, Suite 2000
Des Moines, IA 50309-3989
Telephone: (515) 283-4645
Facsimile: (515) 558-0645
mrreck@belinmccormick.com
efcartmill@belinmccormick.com
*Attorneys For Plaintiff,*
*Vermeer Manufacturing Company*

Patrick S. Williams, Lead Counsel
Gerald E. Helget
Michael M. Lafeber
Emily M. Peterson
Jordan L. Weber
Erin S. Conlin
BRIGGS AND MORGAN, PA
80 South Eighth Street, 2200 IDS Center
Minneapolis, MN 55402
Telephone: (612) 977-8400
Facsimile: 612-977-8650
pwilliams@briggs.com
ghelget@briggs.com
mlafeber@briggs.com
epeterson@briggs.com
jweber@briggs.com
econlin@briggs.com

and

Christine Lebron-Dykeman
MCKEE VOORHEES & SEASE PLC
801 Grand Ave., Suite 3200
Des Moines, IA 50309
Telephone: (515) 288-3667
Facsimile: (515) 288-1338
Lebron-Dykeman@ipmvs.com
mvslit@ipmvs.com
*Attorneys for Defendant,*
*The Toro Company*

s/ TOBY M. McKINSTRY
TOBY M. McKINSTRY