# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VERMEER MANUFACTURING CO., | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. CIV-19-855-D |
| THE TORO COMPANY, | ) |
| *Defendant*. | ) |

# **O R D E R**

Before the Court is a Motion to Quash and Motion for a Protective Order [Doc. No. 1], filed by The Charles Machine Works, Inc ("CMW" or "Ditch Witch"), a nonparty. Plaintiff Vermeer Manufacturing Company has filed a Memorandum in Opposition [Doc. No. 11], along with a Cross-Motion to Compel [Doc. No. 10]. CMW has filed a Response in Opposition [Doc. No. 16], to which Plaintiff has replied [Doc. No. 17]. The motions are fully briefed and at issue.

## BACKGROUND

This action was filed as ancillary to a lawsuit currently pending in the United States District Court for the Southern District of Iowa, Civil Action No. 4:19-cv-00050-CRW-HCA ("Underlying Case"). CMW was served with a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" [Doc. No. 1-1] ("Document Subpoena") and a "Subpoena to Testify at a Deposition in a Civil Case" [Doc. No. 1-2] ("Deposition Subpoena") (collectively "Subpoenas").

CMW and Plaintiff are direct competitors, and Defendant recently acquired CMW as a subsidiary. CMW is nevertheless not a party in the Underlying Case. Motion to Quash at 2, 8 n.1. The Underlying Case involves an action for infringement of U.S. Patent No. 10,202,266 under 35 U.S.C. §§ 271 *et seq.*, brought by Plaintiff against Defendant The Toro Company. Plaintiff's Complaint alleges ownership of all right, title, and interest in a valid and enforceable patent, U.S. Patent No. 10,202,266, entitled Low Profile Compact Tool Carriers ("the '266 Patent"). Complaint, [Doc. 1-Underlying Case], ¶¶ 7–9. The Complaint states the '266 Patent was issued by the U.S. Patent and Trademark Office on February 12, 2019, and that Defendant has infringed and continues to infringe the '266 Patent by making, selling, and offering to sell, and using infringing products in the United States, including at least Toro's Dingo TX 1000. *Id*. ¶¶ 7, 11.

The Document and Deposition Subpoenas at issue here seek documents, information, objects, and testimony from CMW. CMW claims these (i) are confidential and proprietary and are not facially relevant to the patent infringement claims, counterclaims, or defenses at issue in the Underlying Case; (ii) are unlimited in time and product scope and impose an undue burden; and (iii) are not proportional to the needs of the Underlying Case.

CMW moves the Court for an Order quashing the Document Subpoena and prohibiting enforcement of the Deposition Subpoena.

## JURISDICTION

The Document Subpoena and the Deposition Subpoena were issued from the United States District Court for the Southern District of Iowa ("Issuing Court") by Plaintiff's

counsel. Both Subpoenas direct CMW to produce documents to, and appear for deposition at, the office of Professional Reporters, 511 Couch Drive, Suite 100, Oklahoma City, Oklahoma.

Rule 45(a)(1)(A) states that "[e]very subpoena must . . . command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises." FED. R. CIV. P. 45(a)(1)(A)(iii).

Rule 45(c) is titled "Place of Compliance" and provides, in part, that "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." *Id.* at (c)(2)(A). Rule 45(d)(3)(A) provides that, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." *Id.* at (d)(3)(A).

Accordingly, the Place of Compliance, as defined in FED. R. CIV. P. 45(c), is located within this Court's jurisdiction.

**STANDARD OF DECISION**

"A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the rules." *Ward v. Liberty*

3

*Ins. Corp.*, No. CIV-15-1390-D, 2018 WL 991546, at *1–2 (W.D. Okla. Feb. 20, 2018) (quoting *Rice v. United States*, 164 F.R.D. 556, 556–57 (N.D. Okla. 1995)). Accordingly, considerations of both relevance and proportionality govern the Subpoenas at issue.

Pursuant to Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1).

Moreover, FED. R. CIV. P. 26(b)(1) sets forth the scope of discovery and provides that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*See also Griggs v. Vanguard Grp., Inc.*, No. CIV-17-1187-SLP, 2019 WL 3069029, at *1 (W.D. Okla. June 20, 2019). Information within this scope of discovery need not be admissible in evidence to be discoverable. FED. R. CIV. P. 26(b)(1). The Advisory Committee Notes for the 2000 Amendments to Rule 26 direct the parties and courts to "focus on the actual claims and defenses involved in the action" in determining relevance for purposes of discovery. *See* FED. R. CIV. P. 26, Advisory Committee Notes, 2000 Amendments, Subdivision (b)(1).

An order quashing a subpoena is not unique to patent law. "Hence, [the Federal Circuit] would normally apply the law of the [relevant] Circuit to the merits of the order." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209 (Fed. Cir. 1987). The

objecting party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

The Court must conduct a case-specific inquiry that turns on factors such as relevance, the need of the party for the documents, the breadth of the document request, the period covered by it, the particularity with which the documents are described, and the burden imposed. *Griggs*, 2019 WL 3058982, at *2.

I. **The request is relevant, necessary, and not unduly burdensome.**

CMW argues that the requests made involve confidential information and disclosure might be harmful. *See* Motion to Quash at 12–14. Further, it contends the Document Subpoena is overly broad and not facially relevant to Plaintiff's claims. Plaintiff responds that CMW misrepresents a narrowly-tailored request. Memorandum at 8.

In the Underlying Case, Plaintiff has disclosed a theory of damages, including "loss of past and future profits." Reply at 3. Plaintiff argues that the information is requested for purposes of "disproving the viability of non-infringing alternatives for lost-profit damages, as well as for proof of the secondary considerations of long-felt need and the failure of others." *Id*.

CMW, here, moves to quash and also seeks a protective order; accepting that confidential information is involved and disclosure might be harmful, the burden shifts to the non-moving party to establish relevance. *See In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009); *see also Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987). A determination of relevance implicates substantive patent law.

Therefore, the Court looks to Federal Circuit law rather than regional circuit law in discussing relevance. *Truswal Sys. Corp.,* 813 F.2d at 1211–12.

In *Micro Motion, Inc v. Kane Steel Co.,* a plaintiff sought to obtain information from a nonparty competitor that was purportedly relevant and necessary to the issue of damages in the underlying patent infringement suit. 894 F.2d 1318, 1319–20 (Fed. Cir. 1990). The nonparty moved to quash the subpoena, which in large part sought disclosure of the nonparty's confidential business information, such as sales volume of certain products and customer lists. *Id*. The Federal Circuit found that a district court erred in allowing the discovery sought, where the plaintiff offered no more than "a theoretical argument that the requested information somehow relates to its pending California action." *Id*. at 1325. The Documents Subpoena includes the following Requests for Production:

> 1. Documents sufficient to identify every model of mini skid steer ever offered by Ditch Witch, along with the following information for each: (1) machine weight, (2) horse power, (3) rated operating capacity, (4) hinge pin height, (5) list price, and (6) dates during which the machine was available for sale in the U.S. market.
>
> 2. Documents sufficient to identify every alternative mini skid steer design, concept, or prototype considered by Ditch Witch to increase lift capacity or lift height, regardless of whether or not it has been commercialized.
>
> 3. All market studies, consumer surveys, focus group results, reports, and presentations relating to customer interest in, or demand for, increased lift capacity or lift height for compact utility loaders.
>
> 4. All presentations, studies, competitive assessments, comparisons, memos, reports, or meeting minutes relating to Toro's TX-1000 or Vermeer's CTX50 or CTX100.
>
> 5. Documents sufficient to show whether Ditch Witch ever considered a vertical lift loader arm configuration for a mini skid steer.

6

6. For each mini skid steer design, concept, or prototype having vertical lift loader arms that You considered, documents sufficient to (1) show its specific features, (2) identify the time period during which it was pursued, (3) identify the current status of the project or the reason(s) why it was not commercialized, and (4) quantify the man hours spent pursuing it.

7. All documents and communications referring or relating to the introduction of mini skid steers with vertical-lift arms by Toro or Vermeer in 2015.

8. All communications with Toro relating to Vermeer or Vermeer's CTX50 or CTX100 mini skid steers.

9. Documents sufficient to show all difficulties, problems, or failures that You encountered or anticipated with implementing vertical lift loader arms on a mini skid steer.

The Deposition Subpoena includes the following Deposition Topics:

1. The documents responsive to Vermeer's document subpoena and [CMW's] efforts to gather and produce these documents.

2. The market for mini skid steers in the United States.

3. The features of mini skid steers that drive customer demand.

4. Ditch Witch's efforts to design or develop a mini skid steer with vertical lift loader arms, including the specific designs, concepts, or prototypes considered.

5. Ditch Witch's efforts to design or develop a mini skid steer with increased lift capacity or lift height, including the specific designs, concepts, or prototypes considered.

6. Ditch Witch's reaction to the introduction of mini skid steers with vertical-lift arms by Toro or Vermeer in 2015.

7. Communications with Toro relating to Vermeer or Vermeer's CTX50 or CTX100 mini skid steers.

8. Difficulties, problems, or failures encountered or anticipated with implementing vertical lift loader arms on a mini skid steer.

9. Difficulties or challenges posed by attempting to increase lift capacity or lift height for mini skid steers.

Plaintiff argues that Requests for Production 1 and 3 and Deposition Topics 2 and 3 are relevant as to damages, including "loss of past and future profits." Memorandum at 11. Plaintiff argues that "information relating to the [compact utility loaders, also known as mini-skid-steers ("CUL")] market, competitive products offered in the market, and consumer demand for particular CUL features . . . are important to the 'but for' analysis underlying the lost-profits inquiry." *Id*.

Plainly, Plaintiff seeks discovery relevant to the issue of whether there are acceptable non-infringing alternatives so as to allow for a lost profit analysis. As the *Micro Motion* court pointed out, recovery of lost profits presents challenges to a plaintiff in a situation where there are multiple competitors in the market, because it becomes more difficult to prove that "but for the infringement, it would have made the infringer's sales." *Id*. In such circumstances, patentees generally must show that any alternative source of supply "is an infringer or puts out a noninfringing product that is an unacceptable alternative or has insignificant sales." *Id*.

This case is unlike *Micro Motion* in that Plaintiff here has offered a specific damages theory and establishes exactly how the issue to which each request relates is involved. Certainly, Plaintiff's theory, like that of the patent holder in *Micro Motion*, is that its potential right to "lost profit" damages turns on whether acceptable non-infringing substitute products are available in the marketplace. *See Micro Motion* 894 F.2d at 1322. But the procedural posture of the Underlying Case is distinctly unlike the one at issue in

*Micro Motion*—Plaintiff is not seeking evidence as to CMW's infringement, nor is it fishing for particular theories on damages that might apply.

In this case, Defendant has "asserted that thirteen of CMW's Ditch Witch CULs compete with Toro's TX-1000, and these are potentially non-infringing alternatives." Motion to Compel at 3. The record indicates there is a limited number of competitors in this field—about twenty in all—who manufacture and sell CUL products. Reply at 7. CMW acknowledged it is Plaintiff's direct competitor and that its CULs do not include a vertical lift, "and are therefore non-infringing." *Id*; *cf. Heraeus Inc. v. Solar Applied Material Tech. Corp.,* No. C 06-01191 RMW (RS), 2006 WL 2067859, at *2 (N.D. Cal. July 24, 2006) (quashing a subpoena served on a plaintiff's nonparty competitor because plaintiff's damages theories were no more crystalized than those of the patentee in *Micro Motion*).

Therefore, the Court finds that as to Requests for Production 1 and 3 and Deposition Topics 2 and 3, Plaintiff has met its burden of showing these are relevant to establishing whether non-infringing alternatives existed. *See In Negotiated Data Solutions LLC v. Dell, Inc.*, 2009 WL 733876 (N.D. Cal. 2009) (denying a motion to quash and noting that the court in the ancillary proceeding should be permissive) (citing *Truswal Sys.Corp.*, 813 F.2d at 1212; *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 681 (N.D.Cal. 2006)).

As to the remaining requests, Plaintiff contends they pertain to establishing (1) a long-felt but unsolved need; (2) failed attempts of others; and (3) commercial success. Memorandum at 3. This is so because Defendant's counterclaim alleges the '266 patent was obvious.

A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); *see also KSR Int'l Co. v. Teleflex, Inc.,* 550 U.S. 398 (2007). Obviousness is a question of law based on underlying findings of fact. *In re Kubin,* 561 F.3d 1351, 1355 (Fed. Cir. 2009). Secondary considerations, such as commercial success, long-felt but unsolved needs, and the failure of others, must be considered. *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.,* 676 F.3d 1063, 1075 (Fed. Cir. 2012); *see Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966).

For such evidence to be probative of nonobviousness, a patentee must demonstrate a nexus between the patented features and the particular evidence of secondary considerations. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 305 n.42 (Fed. Cir. 1985).

"[T]he United States Court of Appeals for the Federal Circuit has recognized that sales information from non-parties may be relevant on the issue of commercial success." *DeGregorio v. Phillips Electronics N. Am. Corp.*, 2007 WL 4591966, *2 (N.D. Ill. 2007) (citing *Truswal Sys. Corp*, 813 F.2d at 1211). Commercial success, in turn, is relevant to show that the patented device is non-obvious. *Id.* To be relevant, commercial success must be linked to the "merits of the claimed invention." *Ethicon Endo–Surgery, Inc. v. Covidien LP*, No.2014–1771, 812 F.3d 1023, 1034–35, 2016 WL 145576, at *9 (Fed. Cir. Jan. 13, 2016); *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1356 (Fed. Cir. 2012); *Ormco*

*Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006).

The parties' relative success in the marketplace selling the patented CUL's as an alternative to CMW's non-patented CULs is relevant to the secondary consideration of commercial-success. *See Choon's Design LLC v. Zenacon, LLC*, No. 13-13568, 2014 WL 12662334, at *1 (E.D. Mich. Aug. 28, 2014) (denying nonparty's motion to quash and finding sales information relevant). Likewise, the Court is satisfied that should Plaintiff be able to show CMW knew of Plaintiff's patent, it would be relevant to establishing a long-felt but unsolved need, and that CMW's failed attempts to increase lift capacity without increasing CUL size and weight would be a strong indicator that Plaintiff's patent was not obvious. *Cf. Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (granting a motion to quash a nonparty subpoena and holding relevance was not established where there was no connection as to whether products have been or are successful due to the merits of the claimed invention). Relevance in this case has been adequately established.

In a case such as this, however, even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit. *Micro Motion*, 894 F.2d at 1323; *accord Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

As to need, CMW contends there is readily-available material on the internet that could provide Plaintiff with the information it needs, without allowing it access to a competitor's confidential information. Response at 4 n.2. CMW contends "detailed

11

information about available alternate products and their respective capabilities is publicly available and can be obtained." *Id.* Although CMW's proposition shows that some information pertaining to the requests may be available, the specific information such as market projections, CMW's "reaction to the introduction of [the patented alternative]," and "challenges posed by attempting to increase lift capacity," for example, will not be accessible. Document Subpoena [Doc. No. 1-2] at 2. Further, that the information may be available elsewhere, say from an alternate competitor, is insufficient to obviate need, as Plaintiff's requests relate specifically to CMW's operations.

CMW next argues that the disclosure requested is unduly burdensome. A party resisting discovery on the basis that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *Gen. Elec. Capital Corp. v. Lear Corp.,* 215 F.R.D. 637, 640 (D. Kan. 2003).

The Court agrees that some of the requests in the Document Subpoena are overly broad on their face, specifically Requests for Production Nos. 1, 2, 3, 5, and 6. *See, e.g., Lindley v. Life Inv'rs Ins. Co. of Am.,* No. 08-CV-379-CVE-PJC, 2009 WL 3756659, at *1 (N.D. Okla. Nov. 9, 2009) (finding a request for production that "seeks any document relating to any communication between Life Investors and any person that relates to any proposed or actual legislation defining the phrase actual damages" overly board on its face).

An adequate solution to these objections of overbreadth, however, has been proposed by Plaintiff—and largely accepted by CMW. *See* Motion to Compel, [Doc. No. 11] Ex. 1 at 5–9. The Court hereby modifies the Subpoena to incorporate the proposed

compromises resolving the overbreadth issue as set forth in Doc. No. 11, Ex. 1 at 5–9. As modified, the Court finds Plaintiff's need for the documents and testimony requested outweighs the burden imposed on CMW by the request.

I. **The Underlying Case's protective order will suffice to protect the information at issue.**

The Court may issue a protective order under Rule 26(c) of the Federal Rules of Civil Procedure upon a showing of good cause by the movant, to protect that party from annoyance, embarrassment, undue oppression or undue burden or expense. FED. R. CIV. P. 26(c); *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981). Whether to enter a protective order is within the Court's discretion. *See, e.g., Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). "The 'good cause' standard of Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Francis v. Apex USA, Inc.,* No. CIV-18-583-SLP, 2020 WL 548565, at *2 (W.D. Okla. Feb. 4, 2020).

CMW argues generally that courts routinely issue protective orders in situations such as this, and that the Underlying Case's Stipulated Protective Order [Doc. No. 11-2] will not suffice to protect the requested information. Motion to Quash at 10–12. In its Response, CMW mentions that Plaintiff's burden to establish both relevance and need "is not obviated by the existence of a protective order in the Underlying Case." Response at 11.

The Stipulated Protective Order in this case provides that "third parties producing documents in the course of this action may also designate documents as 'Confidential' or

13

'Confidential—Attorneys' Eyes Only,' subject to the same protections and constraints as the parties to the action." Motion to Compel [Doc. No. 11], Ex. 2 ¶ 7. In *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, a district court found an underlying protective order insufficient because the parties to the underlying case, as opposed to the third-party competitor, would be left "with the option of how disclosure of such confidential information is handled at trial," and "it would be divorced from reality to believe that either party here would serve as the champion of its competitor . . . to maintain the confidentiality designation or to limit public disclosure . . . during trial." 206 F.R.D. at 530–31 (citing *Micro Motion,* 894 F.2d at 1325).

The Stipulated Protective Order in this case, unlike the one in *Mannington*, gives the third party the option of designating the information's level of confidentiality. Should a party to the Underlying Case seek to change the designation selected by the third party, they must "move the Court for appropriate relief." *Id*. ¶ 14. The third party must also be notified of the request. *Id*. Further, Defendant in this case is CMW's parent company, likely to protect CMW's interests. Contrary to the court's conclusion in *Mannington*, here, "it would be divorced from reality" to believe that a parent company would not "serve as [CMW's] champion." 206 F.R.D. at 530–31.

The Stipulated Protective Order in the Underlying Case suffices to protect the information sought. *See Cudd Pressure Control, Inc. v. New Hampshire Ins*. Co., 297 F.R.D. 495, 502 n.3 (W.D. Okla. 2014) (finding that a protective order already in place was sufficient to protect trade secrets and confidential information).

**IT IS THEREFORE ORDERED** that CMW's Motion to Quash and Motion for

Protective Order [Doc. No. 1] is **DENIED**. Plaintiff's Cross-Motion to Compel is **GRANTED**, subject to the modifications to Requests for Production Nos. 1, 2, 3, 5, and 6 detailed herein.

**IT IS SO ORDERED** this 13th day of March, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge